I am Ian Northen. I am here on behalf of three clients, the Phyllis Schlafly Revitable Trust, the Eagle Trust Fund, which is 52 years old, and the C3, the Eagle Forum Educational Legal Defense Fund. I am going to take a page out of Julius Caesar's playbook and try and split this into three parts. He tried to split Gaul into three parts. First, I would like to reserve five minutes for rebuttal. The second part of my argument today is I would like to address, to the extent necessary, our request for injunction. We asked for a nationwide injunction at the lower court. I think the lower court got it wrong, and I would like to spend some time with that. Lastly, the second appeal, 3761, which involves this indefinite stay. The challenge that we have as litigants, when we raced off to federal court initially, how to tackle that given the uncertainty that we are still dealing with even as we stand here today. Taking that last part first, when you look at what happened in context, when we first raced off to the courtroom, it was just before the last presidential election in 2016. It is some 27 months ago. When we asked for that emergency relief, we did not get it. We marshaled ourselves and regrouped, thinking that we could solve the court's lack of interest with demonstrations of my client's registered trademarks and things like that. We went back to the court a second time on three very narrow issues, the issue of Phyllis Schlafly's brand. Even the Uber driver on the way over this morning remembered who Phyllis Schlafly was and her work that spanned more than six decades. We are trying to protect her brand. In addition to that, we are trying to protect that second time we went to court, the Eagle logo, a logo that had been in effect since the Eagle Trust Fund started using it in the late 60s. It had been a registered trademark since the late 90s. It was a 17-year-old mark. It was filed for in 2000. It became incontestable at one point after the lapse of time. Unfortunately, when we went back the second time, the court did not parse those things out like we asked it to. We believe that was significant enough error and an abuse of discretion. That leads us now to where we are here. Not only did he not give us the relief we asked, I don't want to cry like spilled milk, but he also effectively locked us out of court. Out of his court. Out of his court. We have redress here. Thank you, Your Honor. By locking us out of court, we asked for a responsive pleading. The very first thing right out of the gate that opposing counsel filed was a motion to dismiss or stay on Colorado River abstention grounds. He did that on election day two plus years ago. From that point on, unfortunately, I think the district court's analysis was colored. He thought this could be someone else's problem. Unfortunately, it cannot. The Eastern District of Missouri is the only place where Phyllis Schlafly's Revocable Trust is a party. It's the only place where we think we can adjudicate fully the federal claims that are before it. Well, it's in the probate case some way, isn't it? Well, I disagree, Your Honor. Well, it has to be. Missouri's probate court is general jurisdiction. I have to tell you. Maybe I do have to tell you. But it has the power of anybody affected by the probate matter. Even the state of Missouri, under an amendment to our law. Go ahead. I agree with that generally, Your Honor, but it can't fully adjudicate the trademark issues that are part of our causes of action. Our causes of action, one, was a Federal Defend Trade Secrets Act. The probate court can't address that. It can't contend with that. It doesn't have the capability. Counts 2, 3, 4, we're all under the Lanham Act. The Lanham Act can be enforced by state courts, right? Well, Your Honor, but a probate court is not well equipped to give the uniformity and the conformity. It's probate division of the General Jurisdiction Circuit Court, Counsel. Absolutely. So you know. But Congress, in passing the statute, gave plaintiffs the ability to choose their route. And so what we did was we brought it to federal court because we thought we would get a fully informed look. A fair shake on those issues. And although I hesitate to call them defenses because they're not part of an answer. The trial court judge did not require the other side to answer our complaint. It did not require them to answer our amended complaint. But in their argumentation, they raised things like cancellation of our trademarks. Cancellation of a trademark is an exclusively federal issue. At least that's the way I understand it. Typically you have to take that first to the U.S. Patent and Trademark Office. The other side didn't do that here. They raised it as a footnote in a response brief. It's all argumentation and innuendo from counsel. That's not something, again, although there was concurrent jurisdiction originally, it's not something that the state courts, frankly, are equipped to contend with. Dealing with that level of sophistication of our intellectual property arguments. It's that bundle of rice that we're trying to protect. But not only were we effectively locked out, but when the court invited briefing on the subject, we briefed it under Colorado River. The other side responded. We did so. We responded to those motions initially. Then the court issued, as part of our denial of our injunction, the very order that's on appeal here, as part of that, he said, show cause why I shouldn't kick the can down the road and abstain. And using that exceptional circumstances test under Colorado River, we fully briefed it, and we'll rest on it, that we don't believe that it comes close to meeting that standard. But here, the court did a little bit of a shift on us. The trial court, instead of then ruling on Colorado River, which we think, we believe it was a misapprehension to then just reframe it and recharacterize it as docket control. The courts cautioned against that, including the Supreme Court, cautioned against that in Colorado River. Well, let me ask you, as I understand it, when you were in federal court in Illinois, you filed a counterclaim that basically raised these issues. So there is a forum where they were raised in Illinois. Now that case eventually got remanded to state court, so now you're back in state court on those issues. But at a minimum, going back to Judge Benton's question, why shouldn't the federal court say, we're going to wait, let the probate court at least decide whether the trust amendment is valid. We're not in the will contest business here. Let's at least wait to see what the will says and what the trust says before we start down the road of all these other issues. What's wrong with that analysis? Two things, Your Honor. First of all, the Southern District of Illinois did not address the intellectual property in this case. I know they didn't, not in this case, but you raised it in there. No, quite to the contrary, Your Honor. The Southern District of Illinois involves Phyllis Schlafly's American Eagles, which is a separate CFO. No, I think we're talking about two different things here. In the case that got removed from state court to federal court, you raised it there, right? The Eagle Trust Fund did to the extent it owns those two trademarks. That's correct. And then that got eventually remanded, so that's why it's in state court now, right? Yes, back to Madison County, across the river. Now, the reason why I can't contend with it there, Your Honor, is we filed that defensively. When we filed our claim and went to the injunctive relief, that's when the other side, that's when this gang of six directors, the putative majority of the C4, filed those claims for the very first time in Madison County. That case had been pending for more than a year when they filed and asked to amend at that time. That case has since been dismissed for failure to state a claim, those claims. Now it's been amended a second time. It was done so without prejudice. Here we are now 33 months into that litigation, no further ahead. And so, yes, we filed defensively because of the risk of preclusion. We thought there was a real threat, whether the state court or the federal court said so or not under Colorado River. We feel that there's a risk that there could be some preclusive effect. But why the probate court can't solve the problem, Your Honor, and why we shouldn't have to wait for the probate court, is what we presented in our very first injunction. We presented those estate planning documents and showed to the court that these rights belong to Phyllis Schlafly personally, the brand I'm talking about now. Because that's what's at issue in the probate court, not the federal trademarks. Those belong to Eagle Trust Fund, but the brand. And the reason why the probate court's not well-equipped to do that, or why we shouldn't have to wait, is one, there's irreparable harm. When someone's mimicking and copying and infringing on your stuff, you shouldn't have to wait for what can be a lengthy probate proceeding to resolve the issue. But the other reason is it's belts and suspenders, Your Honor. Everything in her will pours over into this revocable trust. That was an argument we presented to the district court, and it committed, I believe, an abuse of discretion when they didn't analyze that point. We asked the court to look at that narrow issue. What does Phyllis Schlafly's revocable trust own? And whether those assignments in August are valid or not. We presented her estate planning lawyer's affidavit to support that. But whether they're valid or not, it still inevitably pours over into her estate, and into her trust, which is the plaintiff in this case. The only case where it is the plaintiff. And so that's why we shouldn't have to wait. But it's also an inevitability. The other side, on that point, doesn't go so far to claim ownership. What they do is they say, well, you haven't proven ownership. Well, wait a second. We're entitled to some presumptions under the law. And that's the biggest challenge I've got, is the district court analysis, when it conflated in its order, said counts one through five, there's not a likelihood of success on ownership. Well, wait. Counts one through five are each different. They're different pieces of property. We're talking about a federal trademark for an eagle logo that's used on publications. We're talking about an eagle pin, another federal trademark, also incontestable. As we were talking about those separate pieces, he just threw them into one big stew pot and said, well, I'm not convinced. And he did so, regrettably, I think he misapprehended the concept, because the other side had challenged our right to the property. The mere allegation, and it wasn't even an allegation, because it's not an answer or a counterclaim. It was just the argument and the innuendo from a briefing opposing counsel. That was enough. If that's true, Your Honor, and it can't be, it can't be true, because otherwise all you would have to do to defeat any injunction would be to simply say, well, we dispute that. And that goes too far. And that's not within the zone of discretion that this court should give to a district court and a trier of facts. There were no evidentiary hearings, and we asked for them repeatedly. There was no Rule 16 conference. We asked for that repeatedly. There was no status conference under Rule 26. The normal types of things you would see. Because the remedy, Your Honor, is if they got it wrong, at least let us proceed with our case. You know you're in the third part of Gaul. You're aware of that. And so at least let us proceed with our case. And that's the biggest harm and the damage that not granting the injunction did in the first place is when coupled with the stay, which took almost a year to rule on. But our case has been pending for 27 months. The stay has been pending for over a year. That, unfortunately, leaves us with no access to the court. I was able to get through security quickly this morning, but my clients cannot get in the door of the district court for the better part of two years on these narrow federal trademark claims. Thank you, counsel. Mr. Silvertree? May it please the court. Eric Silvertree for the appellees. I'm struck by his last comment where he says he's had no access to the court. Because when Judge Ross entered his temporary stay, he directed the parties. He ordered the parties to file reports every six months.   Because when Judge Ross entered his temporary stay, appellants have never filed a report. They've never exercised their rights or even complied with the judge's order to file reports. So when he says that he has no access to the court, he's wrong. He's been directed to do something he's chosen not to do. Mr. Northen started by talking about context, and I'd like to provide a little context myself. I take exception to the characterization of the underlying lawsuit as a genuine effort to safeguard intellectual property. This lawsuit is, and has always been, a desperate attempt by John Schlafly and others to avoid the negative consequences of the litigation in Madison County. The timing of the lawsuit is telling. They filed it the morning of an October 19, 2016 hearing when Judge John Schlafly and Ed Martin were going to be removed. There was a motion pending before the court, and they ran in, as he says, to rush to file this lawsuit. They were removed, right? They were removed, Your Honor. Proceed. And they could have intervened in that lawsuit. They could have intervened to assert rights in Madison County. They chose not to. They chose to come here. And, Your Honor, I submit the reason they chose to come here is because they were shopping for a new venue. They were shopping for a new judge. Judge Ross saw through the charade. He denied properly the first TRO. There was no appeal of that. They turned around and filed a second motion. He properly denied the second motion. And when they tried to unilaterally start discovery without a Rule 16 conference, he ordered the parties to brief a stay. He gave the appellants every opportunity. The stay was briefed, and Judge Ross entered a temporary stay. He directed the parties to submit a report advising the court of the status of the related cases every six months or within ten days of any final judgment or a ruling on dispositive motions in the underlying or related cases. One of the issues in determining whether an order is truly a stay or whether it's a Colorado River abstention is that if it's a stay, there's anticipation that you'll end up back in federal court on some issue or issues. Assuming everything goes through Madison County litigation, the Southern District of Illinois litigation, and the probate court, what would be left for Judge Ross to do? Your Honor, there are multiple issues in multiple courts. Unlike a Colorado River abstentions issue, we don't have just a state and a federal. We have multiple federal litigations. We have multiple state litigations. I think, to me, I don't see any set of facts where there's going to be this congruent finding in multiple jurisdictions where there's nothing left for Judge Ross to do. I think, as the court noted in the earlier argument, one of the things Judge Ross is going to have to do is, after the probate court makes a decision or a determination  that's going to come back to Judge Ross to then determine whether there are enforceable rights by the Phyllis Schlafly Revocable Trust remaining. Your Honor, I think what you can see is that going back, after the court was stayed, after the case was stayed, after they started ignoring their obligations to provide reports, then all sorts of different claims were being filed in all sorts of different venues. We now have litigation in PSA in the Phyllis Schlafly American Eagles case in the Southern District of Illinois. In fact, in that case, there have already been some rulings, a ruling that impacts the right of certain of the appellees to use the name, image, and likeness of Phyllis Schlafly. There has been assertions of intellectual property claims by Eagle Trust Fund and Eagle Forum Education Legal Defense Fund in counterclaims in Madison County. There have been amended counterclaims in Madison County asserting expanded claims related to certain of those intellectual property rights. There have actually even been claims asserted in the District of New Jersey in connection with litigation over insurance proceeds where the estate of Phyllis Schlafly, Eagle Trust Fund, and Judge Schlafly have specifically incorporated the intellectual property claims or attempted to incorporate those intellectual property claims into that litigation. We have all sorts of different venues. Yeah, but these two cases, 2115, 3721, are the only ones where the revocable trust is a party, right? Correct. Do you think they're a party or not a party in the probate case? They are not a party. Well, no, they are a party to the probate case. Well, I'm using it in the technical sense of party. Are they a party in the probate case? We believe that they are a party to the probate case. Are they listed, you know, if you go on CaseNet, Missouri Courts, and look, as a party, you know, are they? I would have to go back and look at that, Your Honor, but my understanding, I'm not representing any party in the probate case. I believe they're a party. I believe they have counsel. I believe they have counsel that have attended and participated in depositions in the probate case. Okay, thank you. Your Honor, Mr. Northen would like to talk about the injunction. We don't get to the injunction, Your Honor. The same gamesmanship that started with the filing of this lawsuit in the first instance is clearly evident with the filing of the appeal as to the April 17th order. This court has consistently rejected interlocutory appeals seeking to challenge denials of TROs for lack of appellate jurisdiction. I thought one of our, did our administrative panel not reject that argument? No. They took one of the motions with the case, but I thought that one they denied. My understanding is both motions to dismiss have been taken with the case. I'll double check that. This court has made clear that you have to look at the substance of the order to determine whether it's a denial of a TRO versus a preliminary injunction. Here, the substance of this April 17th order clearly is the denial of a temporary restraining order. Let's assume for purposes of this discussion that it's properly before us as a PI. I think one of the complaints of opposing counsel is that there just isn't enough analysis on the likelihood of success on the merits. Can you speak to that? I think Judge Ross got it absolutely right. Certainly, I think he did it within the bounds of his discretion. Is it enough to say, well, you just, I just don't know? Is that enough to say, well, then you haven't shown the likelihood to just sort of say there's still so much factual dispute here, issues that I just can't resolve? I think it was enough for Judge Ross. I think Judge Ross looked at the facts, looked at the arguments, looked at the record that was presented to him and made a determination that there were significant factual disputes that over the ownership of the intellectual property at issue. I thought he had presented numerous arguments on both sides of the issue. I think his determination was, I can't make a determination that there is a likelihood of success by the appellants in order to satisfy that first factor of data phase. Do you agree that there's only a few of the pieces of the intellectual property that are at issue here in this preliminary injunction? Yes. I think that's important to note. The appellants attempted to curtail or revise their first TRO motion by restricting what they were seeking access to. And what they really did is they jettisoned their arguments as to the database and the lists to really focus on really two. There were not three issues of intellectual property or property that were being sought. They talk about the Phyllis Schlafly report. The Phyllis Schlafly report was never presented as an item of property for which they were seeking injunctive relief or a temporary restraining order. It was actually used as an example of the use of the logo or the name, image, and likeness. But I think the court had ample evidence, not just innuendo, Your Honor, beforehand. The record contained not only the assignment, which under Missouri law, under the estate of gross case, there is a presumption against the assignment and the amendment because John Schlafly was in a position of trust and received a benefit. So there was a prima facie. Under Missouri law, that creates a prima facie case for a jury to decide. I think what the appellants would want the court to do, the district court to do, is to have a mini trial in the context of every motion for a temporary restraining order. That is not what data phase speaks to. You don't have to make an ultimate determination, especially in the lack of any evidence or testimony in a fuller evidentiary record by virtue of depositions and discovery, which did not exist at the time. What's also noteworthy and not addressed is the fact that Missouri does not recognize a post-mortem right to publicity. In the absence of a post-mortem right to publicity under Missouri law, I'm not sure what would be pouring over, but I would also point the court's attention that the pour-over will is not in the record. There's no reference to any pour-over will. It's not attached to any of the pleadings. It's an argument that I think that- It's a public document now, right? It would be a public document by virtue of the probate proceedings. Correct. Proceed. The EGLE logo, there was discussion about the cancellation issue. Yes, we raised the fact and there's evidence in the record of the fact that it was procured through fraud. The specimen presented to the U.S. Patent and Trademark Office sets forth that it was an EGLE trust fund that they used the logo, but in  We also introduced evidence related to minutes of board meetings where EGLE Forum, it was told that EGLE Forum was obtaining the trademark. But more importantly, there's an issue as to whether EGLE trust fund even properly exists anymore. And those documents were in the record. There's all sorts of shenanigans that were presented with respect to an amendment of EGLE trust fund. In some instances, they refer to it as a trust. In other instances, they refer to it as an association of members. In either case, the amendment, there's nothing in the trust document that provides for an amendment. There's nothing in the trust document that provides for the power to hold property. And we think that the EGLE trust fund doesn't properly exist, does not have standing. That is an issue that's been presented to the Madison County Circuit Court to address EGLE trust fund. That's all the Revigol trust has standing, right? Yes. Yes. Thank you. Yes, sir. Even if you get past the likelihood of success on the merits, which we don't believe you can, especially under the standard, the abuse of discretion standard, there's another issue that has not been addressed, which is the failure to prove existence of immediate and irreparable harm. The two instances that they address in their papers and in their arguments are a luncheon that had taken place prior to filing the motion for temporary restraining order. And also the report, which had been published in January. This is months prior to. So in the next instance, they can't establish any immediate harm or any emergency that would justify coming into court to seek a temporary restraining order. But beyond that, there was no evidence of irreparable harm. The sole evidence they rely on is this notion that there was a $100 check that was submitted to participate in that luncheon. As Judge Ross pointed out, that check was reimbursed. And there's no irreparable harm. It was clearly capable of being paid back. And that's money damages. There's just nothing else that's in the record regarding the possibility of harm for the ongoing use of the name. Your Honor. Brand. Not enough to warrant the temporary restraining order that they were seeking. No. I think Judge Ross weighed all of the evidence that was presented to him, weighed the record, and made the determination properly under his discretion that the appellants had failed to prove the existence of immediate and irreparable harm. Your Honor, I would also point out not only is there no jurisdiction, appellate jurisdiction, for the first order, there is no appellate jurisdiction that exists for the second order. This was not a Colorado River stay. They acknowledged that, yes, Judge Ross asked for briefing as to a Colorado River stay, and then he made the determination that it didn't qualify as a Colorado River stay. He properly used his discretion and used his inherent power to grant a discretionary temporary stay to control his docket, conserve judicial resources, and provide for a just determination of the cases before it. He applied the proper test under the Agro case. He properly applied each one of the factors and made a determination correctly that this case should be stayed. And it's a temporary stay, and if they want to present their, respond to the court's order and present updates, I think the updates that we've been providing to the court will show that Judge Ross was right. He should stay the case and let these other cases play themselves out. Can I ask one question? Looking at your interim reports, as I understand it, the probate judge appointed a Betty Schaefer as special fiduciary of the Phyllis Schlafly Revocable Trust. And one of her responsibilities is to investigate and determine if she should be substituted as plaintiff in this litigation and whether she should even continue this litigation. Am I correct? That's correct, sir. Is there, I assume there's been no determination made as to that issue? My understanding is that there has not yet been a determination made, but that she's still doing her due diligence on that. So in theory, she could go back to Judge, I guess it's Withington, who's the probate judge, and say, I think this case has no merit. Let's dismiss it and not pay any more attorney's fees out of the trust. Or she could say, I think it's a great case, but I should be substituted as plaintiff? Is that where we're at? That's absolutely within the range of possibilities. Judge Withington is no longer the judge in the probate court, but yes, that's exactly right. Who's the current judge? I don't know. Thank you. Judge Levy. Thank you. Thank you, Your Honor. We would respectfully request that the court affirm the orders below. Thank you. Thank you. Mr. Northen? Thank you again. Just briefly. To your question, Judge Kelly, I think if the court doesn't know, if the district court doesn't know or doesn't have enough to rule on, then I think it's obligated to move forward with the case. I think it's obligated to move forward with this idea that you have to conduct evidentiary hearings. But that's not what Judge Ross said. Judge Ross said, because of the database, because of controversies over the database and the list, the very things that we jettisoned when we went back to the court the other day, the trademark, just the trademarks, just her brand, he threw those in the same boat. He continued to analyze conflicts over the database when we asked for our second appeal, when we didn't ask for anything. I mean, I agree that eventually the database has to get sorted out, but that's not what we asked Judge Ross. And for him to conflate that, that's the definition of an abuse of discretion, when you consider things that are important or irrelevant or consider things that you shouldn't be doing. And that's exactly what he did. He was still trying to analyze the dispute we had the month earlier about the database as we related to just that trademark. So I think that was improper. Another thing I'd like to say is when you, you know, why ask us to come back and give us a report or give the court a report on dispositive motions? I mean, to me, that raises the very question we are here. You know, why have the district court clerk closed the case? We were, the case was administratively closed if it doesn't have the effect of being this indefinite stay. We have cases that say that doesn't matter, you may know. Go ahead. But if you look at those cases where it's talking about the court's virtually unflagging obligation to resolve these cases, you know, you also have to look at that context too. It's not a situation that Moses Cone, you know, Idlewild distinguished where they say, you know, the trust could have or chose to proceed elsewhere and didn't. That's not the case we're talking about here. We're talking about the district court refuses to allow us to move forward. You know, we asked for all of the things you would expect to see when you're going to proceed on the merits. But the risk here is that what will be left if other courts misapprehend the very same way that the district court misapprehended here? Excuse me. That's the risk to my clients. Now, the special fiduciary, I'll just point out quickly, she's been doing an accounting because the primary issue in the probate matter, not the will itself, but the one in which Ms. Corey, who's a defendant in my case, she sued the trust to try and set aside these provisions. But what she's trying to do is one of the provisions she's trying to set aside includes an offset for all litigation costs. And so what is the special fiduciary is doing in accounting of those litigation costs. She's not called me and said put the brakes on. She's not said withdraw your appeal immediately. Quite the contrary. She's adding up the numbers to see how big the offset's going to be. That's not a problem the probate court can solve for the district court. The district court's the one who has to roll up its sleeves, unfortunately, and get after these intellectual property issues. They're the ones that are equipped to do it, and frankly, they're the only ones that can do it. And we've been locked out from trying to advance that and move that forward. I'd also say, if I could, as it relates to not just ownership. When you look at ownership for the purposes of data phase, data phase cited Corinthians to talk about clarity and bringing clarity to the factors. But when you do that in the context of a trademark, you have to say, do you own the trademark? Well, we have a presumption of ownership under the statute. The statute says if you register, any registered trademark since the late 1800s is given a presumption of ownership. The court did not analyze that factor. And that to me is where we're, I see that I'm out of time, but that to me is where we're left amiss because by failing to consider those factors, those presumptions, it leaves us with no remedy. And that's why we're effectively locked out of court and why we would ask that this court remand for entry of the injunction and instructions to move the case forward. Thank you. Thank you, counsel, for your argument. Cases 17-2115 and cases 17-3761 are submitted for decision by the court.